UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


**DONALD WALKER**
  Plaintiff

**v.**  No. 1:09CV-00122-J

**MICHAEL ASTRUE**
  Commissioner of Social Security
  Defendant


## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Robert Harrison. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 13 and 14, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 25, 2009, by administrative law judge (ALJ) John Proctor. In support of his decision denying Title II and Title XVI benefits, Judge Proctor entered the following numbered findings:

  1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

  2. The claimant has not engaged in substantial gainful activity since January 5, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

  3. The claimant has the following severe impairment: Epilepsy with seizures (20 CFR 404.1521 et seq. and 416.921 et seq.).

  4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the exception of no driving or working at heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 26, 1974, and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 5, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 14-20).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of

evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

3

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant

4

physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The plaintiff was born in 1974. He completed nine grades of special education. He allegedly is very limited intellectually, cannot read, write, do math, or make change. After school, he worked stacking lumber and as a washer at a ham company until 2007, when he was stricken with an allegedly incapacitating seizure disorder. In 2008, the plaintiff overdosed on Valium and was taken to the Bowling Green Medical Center, where he was diagnosed with depression and possible bi-polar disorder with a history of mental illness, feelings of hopelessness, hallucinations, alcohol and drug abuse, and previous suicide attempt.

The only vocationally-significant impairment that the ALJ specifically acknowledged in his written findings was epilepsy with seizures. Finding No. 3. This case was denied at the fifth and final step of the sequential evaluation process based upon a finding that, although he cannot perform his past relevant work, the plaintiff retains the ability to perform a significant number of sedentary jobs in the national economy. No vocational expert (VE) testified at the administrative hearing. Rather, in his written decision, the ALJ cited Grid Rule 201.24 of Appendix 2 of the regulations to direct an ultimate finding of "not disabled" (AR, p. 20). Utilization of the grids to deny benefits is inappropriate if the claimant is found to have at least one non-exertional impairment that "significantly limits his ability to do a full range of work at a designated level," in this case, sedentary work. *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir., 1986).

5

At the hearing in March of 2009, Susan Curwen, the plaintiff's girlfriend, and Sandra Sloan, the plaintiff's sister, testified that the plaintiff was experiencing recurrent, incapacitating seizures. The ALJ found that "the medical record, following the claimant's treatment with prescribed Dilantin, shows no further recurrence of seizures" (AR, p. 17). Nevertheless, the ALJ gave the lay testimony "some credibility because [the plaintiff] may have recently experienced recent seizures that are not mentioned in the medical record" (AR, p. 18). The ALJ found that the plaintiff "has limitations, primarily as a result of seizures. [However,] my review of the record reveals no significant deficiency in the claimant's ability to perform the work-related activities required by sedentary work" (AR, p. 18). In other words, the ALJ credited the lay testimony to the extent that the plaintiff's epileptic seizures do not occur at a level of severity and frequency that would "significantly limit" the plaintiff's ability to perform the full range of sedentary work as contemplated by *Kimbrough*, supra.

### Dr. Hall's opinion

On July 13, 2007, the plaintiff's treating physician, John Hall, opined as follows (AR, p. 239):

> I examined the above named on June 1, 2007. This patient suffers from recurrent low back pain. He is unable to do any heavy lifting, prolonged standing, sitting or stooping. This makes it very difficult for this man to be gainfully employed.

The ALJ found that, although Dr. Hall's opinion "appears based solely on the claimant's complaints and not clinical findings," ... it is reasonable to assume the claimant could have **some** *(emphasis added)* of these limitations" (AR, p. 18).

The plaintiff contends that, because the ALJ "incorporated [Dr. Hall's] limitations into his residual functional capacity assessment, which included no prolonged sitting or stooping," the ALJ's

6

reliance upon the grids was a reversible error (Docket Entry No. 13, p. 8). The magistrate judge concludes that the argument is unpersuasive because the ALJ incorporated only "some" of Dr. Hall's limitations. The ALJ clearly did not accept Dr. Hall's finding of inability to engage in prolonged sitting. By definition, sedentary work requires prolonged sitting. Furthermore, there is no indication that a prohibition against "prolonged stooping" would "significantly limit" the plaintiff's ability to perform the full range of sedentary work as contemplated by *Kimbrough*, supra. Hence, the ALJ did not err in relying upon the grids to find that the plaintiff retains the ability to perform a significant number of unskilled, sedentary jobs in the national economy.

**Listing 11.02 and 11.03**

The plaintiff's remaining contentions pertain to whether he suffers from a medical impairment satisfying the so-called listing of medical impairments at the third step of the sequential evaluation process. We shall consider the plaintiff's impairments in turn. As noted above, the ALJ acknowledged that the plaintiff suffers from epilepsy with seizures. Finding No. 3.

Listing 11.02 of Appendix 1 of the regulations describes convulsive epilepsy with major motor seizures, and Listing 11.03 describes nonconvulsive epilepsy with minor motor seizures. Both sections require that the claimant provide "[a]t least one detailed description of a typical seizure" including an account of "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." Appendix 1, § 11.00A. This description should be reported by a physician, or substantiated by testimony of a person other than the plaintiff "if professional observation is not available." Id. Furthermore, both sections require that the seizures occur in spite of at least three months of prescribed treatment. Sections 11.02 and 11.03.

7

In addition, Listing 11.02 requires the claimant to show that his seizures occurred "more frequently than once a month," and that if the episodes took place during the day, the episodes consisted of a loss of consciousness and convulsions or if the episodes took place at night, the residual affect of those episodes "interfere[d] significantly with [his] activity during the day." Listing 11.03 requires the claimant to show that his seizures occurred "more frequently than once weekly" and must be accompanied by an "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day."

The burden of proof at the third step of the sequential evaluation process is upon the claimant. In his fact and law summary, the plaintiff does not specifically mention Listings 11.02 and/or 11.03 or attempt to show that his epilepsy with seizures satisfies the foregoing medical criteria. There is evidence that the plaintiff's condition is controlled with Dilantin, an anti-seizure medication (AR, pp. 173 and 83). The magistrate judge concludes that the plaintiff has failed to prove that his epilepsy with seizures satisfies the listings.

### Listing 12.05

Next, the plaintiff argues that the ALJ "erred by not finding [he] had a severe intellectual deficit impairment and depression and by not discussing whether or not they met the 12.05 listing criteria or 12.04 listing criteria" (Docket Entry No. 13, p. 6). We shall consider the plaintiff's intellectual impairment first. Listing 12.05(B) ("mental retardation") specifies that an individual is disabled if he has "a valid verbal, performance, or full scale IQ of 59 or less." Section 12.05(C) provides for disability if the individual has a valid IQ of 60 through 70 "and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

8

The only IQ test mentioned in the plaintiff's fact and law summary is the one administered by certified clinical psychologist Ollie Dennis, Ed.D., on April 9, 2007. The plaintiff scored a full-scale IQ of 45 (AR, p. 206). However, Dr. Dennis noted that, if that score were valid, the plaintiff would be unable to function independently. Dr. Dennis frankly opined that the plaintiff was malingering on the examination for secondary gain (AR, p. 208). In the absence of reliable clinical evidence, Dr. Dennis declined to diagnose an intellectual deficit. The magistrate judge concludes that the plaintiff has failed to prove that his intellectual impairment satisfies the listing.

**Listing 12.04**

The ALJ found that the plaintiff's condition does <u>not</u> satisfy Listing § 12.04 ("affective disorder") (AR, p. 16). The plaintiff has failed to point the court to any probative medical evidence showing that this finding was erroneous. Furthermore, the plaintiff's allegation of disabling depression appears to be based upon a Valium overdose and/or suicide attempt in 2008. This one-time event does not satisfy the so-called duration requirement, to-wit, to be disabling, an impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909. The plaintiff has failed to establish that his seizure disorder, intellectual deficit, and/or depression meet or equal the criteria of any impairment listed in Appendix 1 of the regulations.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).